UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**ANDRE LAMBERT,**

   Plaintiff,

v.    No. 4:24-cv-00911-P

**LEIDOS, INC.,**

   Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion to Compel Arbitration. ECF No. 14. Having considered the Motion, the briefing, and the applicable law, the Court will grant the motion, refer Plaintiff's claims to arbitration, and stay the action pending the resolution of arbitration.

## BACKGROUND

Plaintiff Andre Lambert sued Leidos, Inc. ("Leidos"), his former employer, for unlawful discrimination and retaliation under state and federal law. ECF No. 6. Leidos moved to compel Lambert's claims to arbitration and to abate the case in the meantime. ECF No. 14. Leidos contends that Lambert signed a binding arbitration agreement (the "Agreement") and that Lambert's claims fall within its scope.

As evidence in support of the Motion, Leidos submits a copy of the Agreement, which contains the following provisions:

> In the event a party is sued in court by the other party, the party so sued has the option to divert such case to arbitration as provided herein.
>
> . . .
>
> This Agreement covers all claims, controversies, or disputes arising out of or relating to your application, hiring, employment, and terms and conditions of employment including but not limited to all forms of compensation, hours

worked, and fringe benefits, or your separation from employment, except as specifically excluded from coverage in the following section.[1] For example, this Agreement covers claims relating to employment discrimination, such as . . . physical or mental disability, or any other form of employment discrimination . . . . [T]he arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any dispute relating to the formation, enforceability, applicability, or interpretation of this Agreement, including without limitation any claim that it is void or voidable. Thus . . . , the parties voluntarily waive the right to have a court determine the enforceability of this Agreement.

. . .

Company and Employee mutually agree that all claims, controversies, and disputes covered by this Agreement shall be submitted to and resolved exclusively by final and binding arbitration in accordance with the terms of this Agreement. Employee and Employer agree and understand that they waive the right to trial by jury in court for all claims covered by this Agreement, and instead agree to determination by a neutral arbitrator selected under the terms of this Agreement.

ECF No. 14-4 ¶¶ I, II, and IV (cleaned up).

Lambert's signature is not attached to the Agreement. But the declaration of Katie Fischer, an onboarding manager at Leidos, explains that new hires review and sign the Agreement and other paperwork electronically. ECF No. 14-1 ¶ 2. Fischer explains the process by which each new hire receives a temporary password and signs into an account on Workday, Leidos's human-resources software. *Id.* para. 3. The new hire replaces the temporary password by creating a new one, which only he knows. *Id.* ¶ 4. From this new Workday account, the employee completes the required onboarding tasks, which include reading and signing the Agreement. *Id.* Only a person with the new hire's password can sign in and execute the Agreement. *Id.*

---

[1]Lambert's claims do not fall under any of the exceptions to coverage in the Agreement, nor does he contend otherwise.

Fischer's declaration also explains that Workday archives records of employees' activity on the platform. *Id.* ¶ 10. According to those records, Lambert electronically signed the Agreement at 11:36 a.m. on September 20, 2022.[2] *Id.* ¶ 8.

## LEGAL STANDARD

In determining whether to compel arbitration, a court must decide (1) whether a valid arbitration agreement between the parties exists and, if so, (2) whether the dispute falls within the arbitration agreement's scope. *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)).

Deciding whether a valid arbitration agreement exists is an "analysis of contract formation[.]" *Id.* (citations omitted). "When deciding whether the parties agreed to arbitrate . . . , courts generally should apply ordinary state-law principles that govern the formation of contracts." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (internal citation omitted). The movant has the burden to show that the arbitration agreement is valid. *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021). But the Court must give regard to the federal policy favoring arbitration, and "ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996) (internal citation omitted). After the movant produces "competent evidence showing the formation of an agreement to arbitrate . . . , [the] party resisting arbitration [must] produce *some* contrary evidence to put the matter 'in issue.'" *Gallagher v. Vokey*, 860 F. App'x 354, 357–58 (5th Cir. 2021).

---

[2]Although Leidos attached Workday data readouts to its Motion, the entries stop short before the reported Agreement execution. *See* ECF No. 14-2 at 2. This appears to be an oversight that slipped Leidos's attention. In the Motion, Leidos cites to "Business Process and Integrations Notifications, Ex A-1" to support its claim that Lambert electronically executed the Agreement at 11:36 a.m. ECF No. 14 para. 8. But that document does not contain a record of the execution of the Agreement. However, Leidos did attach a record of Lambert's execution of the Agreement to its reply brief. *See* ECF No. 16-1 at 4.

3

## ANALYSIS

Texas law specifically permits a party to prove the electronic execution of a contract through evidence of a reliable electronic security procedure, as Leidos has done here. Section 322.009(a) of the Texas Business and Commerce Code provides:

> An electronic record or electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable.

The Notifications and Sign-In History constitute evidence of the efficacy of Leidos's security procedures, which determine the electronic execution of the Agreement is attributable to Leidos. Under Texas law, "[a] record that cannot be created or changed without unique, secret credentials can be attributed to the one person who holds those credentials." *Aerotek v. Boyd*, 624 S.W.3d 199, 206 (Tex. 2021). In *Aerotek*, electronic-timestamp data attached to arbitration agreements conclusively established that the employees signed the agreements. *Id*. Here, Lambert was the only one who knew his Workday password, and an uncontroverted electronic record shows that a person who had logged in using Lambert's password signed the Agreement. Under Section 322.009, that evidence is sufficient to attribute the electronic signature to Lambert.

Lambert does not provide his own evidence; he merely argues that Leidos has not carried its burden to prove the existence of a binding agreement to arbitrate.

*First*, he argues that a discrepancy between the Workday records and Fischer's declaration proves that he could not have electronically executed the Agreement when Leidos says he did. ECF No. 15 at 4–5. The Workday document titled "Signon_History_for_Person" ("Sign-On History") shows that on September 20, 2022, Lambert was active on Workday from 7:51 a.m. to 8:39 a.m. ECF No. 14-3 at 5. But Fischer's declaration claims Lambert executed the Agreement at 11:36 a.m., purportedly after Lambert had signed out. ECF No. 14-1 ¶¶ 8, 11.

4

Leidos argues in reply that the difference between Eastern and Pacific Time accounts for the appearance of discrepancy. ECF No. 16 at 3. According to Leidos, Fischer's declaration refers to the events in Eastern Time, and the Sign-On History refers to the same events in Pacific Time. *Id*. The Court's cross-comparison of Leidos's exhibits supports that explanation.[3] Apparently, Lambert executed the Agreement at 11:36 a.m. Eastern before his session ended at 11:39 a.m. Eastern. Thus, there is no real discrepancy in Leidos's evidence. Besides, Lambert gives no alternative evidence or explanation for how the Workday system would have generated a digital record of the electronic execution if he had logged out almost three hours prior. The Court therefore finds Lambert's first argument to be without merit.

*Second*, Lambert adds that Leidos itself did not execute the Agreement. ECF No. 15 at 6. But Leidos does not have to execute the Agreement to make it binding. The Federal Arbitration Act ("FAA") "does not require that a charter party be signed in order to enforce an arbitration agreement contained within it," even when the party whose signature is missing is the party to be bound. *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F.2d 60, 64 (5th Cir. 1987). And here, the party to be bound is Lambert, who did sign the Agreement. Lambert's second argument likewise fails.

Because Leidos produced competent evidence showing the formation of an agreement to arbitrate and Lambert offers no contrary evidence, he has failed to put the matter "in issue." *See Gallagher*, 860 F. App'x at 357–58. Therefore, the Court finds that the Agreement is valid and enforceable.

Under the FAA, when the court finds that a dispute is subject to arbitration, it shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement[.]" 9 U.S.C. § 3. Courts do not have discretion to dismiss the suit merely because all claims in the action are subject to arbitration. *Smith v. Spizzirri*, 601

---

[3]Fischer's declaration was executed in Anderson County, Tennessee. ECF No. 14-1. The Court takes judicial notice of the fact that Anderson County falls within the Eastern Time Zone. *See Current Local Time in Anderson County, Tennessee, USA*, TIMEANDDATE.COM.

U.S. 472, 475–76 (2024). The Court will therefore stay and administratively close this action until the parties report that the arbitration process is complete.

## CONCLUSION

It is almost certain that almost all people living in the modern age have electronically signed documents they do not remember signing. For better or worse, computers usually remember such mundane actions where human memories fail. There is no question that Lambert, whether he remembers doing so or not, electronically signed the Agreement when he began his onboarding at Leidos on September 20, 2022. And he does not deny that his claims fall within the Agreement's scope.

Accordingly, the Court **GRANTS** Leidos's Motion. This action is therefore **STAYED** pending the outcome of arbitration. The parties are **ORDERED** to file a Joint Status Report every 90 days from the date of this Order, apprising the Court of the parties' progress toward resolving this case. The parties must also notify the Court of the arbitration's resolution within **ten days** of the arbitrator's decision. The Court **DIRECTS** the Clerk of Court to administratively close this case until the Court orders it to be reopened.

**SO ORDERED** on this **16th day of January 2025.**

_____
Mark T. Pittman
UNITED STATES DISTRICT JUDGE